UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. B-18-008-1 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Health Care Fraud) |
| JOSE GARZA, | ) | |
| | ) | |
| Defendant | ) | |

United States District Court
Southern District of Texas
FILED

SEP 0 9 2019

David J. Bradley, Clerk of Court

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas; Kevin Lowell, Trial Attorney, United States Department of Justice, Criminal Division, Fraud Section; the defendant, Jose Garza ("Defendant"); and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreements**

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment (Docket No. 119). Count One charges the Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, further agrees that he is waiving any right to have the facts that the law makes essential to convictions on Count One proven to a jury or a judge beyond a reasonable doubt.

**Punishment Range**

2. The maximum penalties for Count One is a maximum term of 10 years of imprisonment, a fine of $250,000 or twice the gross gain or loss, whichever is greater, full restitution, forfeiture of assets as outlined below, special assessments pursuant to 18 U.S.C. § 3013

1

and 3014, and 3 years of supervised release.

3. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than two years in prison without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, Brownsville Division, 600 E. Harrison Street, #101, Brownsville, Texas 78520.

### Immigration Consequences

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Exclusion from Federal Health Care Programs**

6. Defendant understands and acknowledges that as a result of this plea, Defendant will be excluded from participating in all federal healthcare programs, including the Medicare and Medicaid Programs (Medicare and Medicaid, respectively). Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within sixty days of receiving the documents. This exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

**Cooperation**

7. The parties understand this Plea Agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Department of Justice, Criminal Division, and Fraud Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in this Plea Agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

8. Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant—including, but not limited to, healthcare fraud, paying and receiving illegal-healthcare kickbacks, money laundering, and obstruction of justice. Defendant understands that such information

3

includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness at a trial in the above-captioned action, before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant at any proceeding in this matter, to a grand jury, or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents and evidence in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, *if any*, not meet Defendant's expectations, Defendant understands that he remains bound by the terms of this Plea Agreement and that he cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

9. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742 afford a defendant the right to appeal the conviction and sentence imposed. Defendant also is aware that Title 28, United States Code, Section 2255 affords the right to contest or "collaterally attack" a judgment of conviction and sentence after it has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of

ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this Plea Agreement and seek specific performance of these waivers.

10. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant also is aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office is a prediction and not a promise, <u>did not induce his guilty plea</u>, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

11. Defendant understands and agrees that each and all waivers contained in this Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

5

## The United States' Agreements

12. The United States agrees to each of the following:

    (a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two-level downward adjustment under Section 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

    (b) If Defendant qualifies for an adjustment under Section 3E1.1(a) of the Sentencing Guidelines and Defendant's offense level is 16 or greater, the United States may move for an additional one-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete indictment regarding his role in the offense; and

    (c) If Defendant pleads guilty to Count One of the Superseding Indictment, and persists in that plea through sentencing, and, if applicable, fulfills his obligations under the cooperation provisions of this Plea Agreement, and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining count, at the time of sentencing.

## Agreement Binding – Only Southern District of Texas and U.S. Department of Justice, Criminal Division, Fraud Section

13. The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section agree that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Information. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section. It does not bind any other United States Attorney or any other component of the Department of Justice. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

14. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right to:

(a) Bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) Set forth or dispute sentencing factors or facts material to sentencing;

(c) Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) Appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

15. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

16. The United States and Defendant agree that the following Sentencing Guidelines will be used to calculate Defendant's Guidelines range:

(a) The United States and Defendant agree that the Sentencing Guidelines set

forth below are applicable to Count One

(b) As to Count One, the United States and Defendant agree to recommend to the Court that the base offense level is 6, pursuant to U.S.S.G § 2B1.1(a)(1);

(c) As to Count One, the United States and Defendant agree to recommend to the Court that the loss amount related to the conduct described in the Factual Basis of this Plea Agreement is at least $4,700,000.00 and not greater than $22,700,000.00, pursuant to Section 2B1.1(b)(1), resulting in at least an eighteen-level enhancement.

(d) As to Count One, the United States agrees to recommend a sentence at the low end of the applicable Sentencing Guideline range.

(e) The United States and Defendant agree to reserve their respective positions concerning any other applicable sentencing enhancements, if any.

**Rights at Trial**

17. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Plea Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(c)  At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. But if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for the Plea**

18. Defendant is pleading guilty because he *is* guilty of the charges contained in Count One of the Information. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

19. From in or about 2009 and continuing through in or about 2018, the exact dates being unknown, in the Southern District of Texas and elsewhere, in violation of Title 18, United States Code, Section 1349, **JOSE GARZA** knowingly and willfully did combine, conspire, confederate and agree with **RODNEY MESQUIAS, HENRY MCINNIS, FRANCISCO PENA**, and others known and unknown, to commit the following offense against the United States: health care fraud, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items and services, all in violation of Title 18, United States Code, Section 1347.

20. **JOSE GARZA** and his co-conspirators, including **RODNEY MESQUIAS, HENRY MCINNIS, JOSE GARZA**, and **FRANCISCO PENA** were associated with the Merida Health Care Group, Inc., ("Merida Group"), a corporation that purported to provide health care services throughout the State of Texas, including in San Antonio and Brownsville, Texas.

21. The Merida Group was affiliated with several entities (the "Merida Group's affiliated entities") that were owned and controlled by **RODNEY MESQUIAS**. The Merida

Group's affiliated entities included, but were not limited to, Bee Caring Hospice Healthcare, Inc., ("Bee Caring"), in Harlingen; BRM Home Health, PLLC, ("BRM Home Health"), in Harlingen; Bee Caring Hospice, LLC ("Bee Caring Hospice"), in San Antonio; Professional Hospice Care ("Professional Hospice"), in Laredo; Merida Health Care Group of San Antonio, LLC ("Merida Group of San Antonio"), in San Antonio; Illumina, LLC ("Illumina") in Corpus Christi; Virtue Home Health, Inc. ("Virtue Home Health"), in Corpus Christi; Well-Care Home Health, Inc. ("Well-Care"), in Houston; and Excellent Homecare Provider Services ("Excellent Homecare"), in Sugar Land. The Merida Group's affiliated entities purported to provide hospice care and home health services to Medicare beneficiaries.

22. **JOSE GARZA** and **HENRY MCINNIS** helped manage the day-to-day operations of the Merida Group's affiliated hospice entities, including hospice entities.

23. **JOSE GARZA** held various supervisory and managerial positions Merida Group hospice entities, including Operations Manager and Alternate Administrator of Merida Group facilities in Harlingen and Corpus Christi, Texas.

24. **RODNEY MESQUIAS** owned, controlled, and supervised the Merida Group. In this role, **RODNEY MESQUIAS** applied pressure to his employees, including **JOSE GARZA**, to participate in certain aspects of the fraud.

25. **JOSE GARZA** and his co-conspirators, with the knowledge, encouragement, and approval of **RODNEY MESQUIAS**, would falsify various patient records, to include, but not limited to, certificates of terminal illness, face-to-face sheets, and prognosis notes in order to make it appear that hospice patients had six months or less to live when, as **JOSE GARZA** and his co-conspirators then and there well knew, these patients did not appear to have six months or less to live.

26. **JOSE GARZA** and his co-conspirators, with the knowledge, encouragement, and approval of **RODNEY MESQUIAS**, caused the authorization of hospice care services to certain Medicare beneficiaries through the Merida Group's affiliated entities knowing that such services were not medically necessary.

27. **JOSE GARZA** and his co-conspirators, with the knowledge, encouragement, and approval of **RODNEY MESQUIAS**, would knowingly and willfully cause the submission of false and fraudulent claims to Medicare on behalf of the Merida Group's affiliated entities for these medically unnecessary services.

28. **JOSE GARZA** and his co-conspirators, with the knowledge, encouragement, and approval of **RODNEY MESQUIAS** and **HENRY MCINNIS**, would cause medical directors of the Merida Group entities to certify patients for hospice and home health services for multiple years in order to increase revenue from Medicare.

29. **JOSE GARZA** and his co-conspirators, with the knowledge, encouragement, and approval of **RODNEY MESQUIAS** and **HENRY MCINNIS**, would cause Medicare to make payments to the Merida Group's affiliated entities based upon the submission of false and fraudulent claims for hospice and home health services.

30. During the conspiracy, **JOSE GARZA** oversaw the operations of Merida Group entities that submitted approximately $22,700,000.00 in claims billed to Medicare by the Merida Group's affiliated entities, including claims for patients who did not qualify for hospice care and home health services under Medicare's rules and regulations. **JOSE GARZA** stipulates that, as to his role in the scheme, the loss amount is between $4,700,000.00 and $22,700,000.00 in connection with Count One of the Superseding Indictment.

31. The acts described above regarding Count One of the Superseding Indictment were done willfully and knowingly and with specific intent to violate the law, and not by accident,

11

mistake, inadvertence, or other reason.

32. This Statement of Facts does not contain each and every fact known to **JOSE GARZA** and to the United States concerning **JOSE GARZA** and his co-conspirators involvement with respect to the charges set forth in the Superseding Indictment.

33. This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against **JOSE GARZA** regardless of whether the Criminal Information and/or related Plea Agreement are presented to or accepted by the Court. Moreover, **JOSE GARZA** waives any rights that he may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

**Breach of Plea Agreement**

34. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. Failure to fulfill completely all of the obligations under this Plea Agreement includes, but is not limited to, failure to tender the Plea Agreement to the Court, making false or misleading statements before the Court or to any agents of the United States, committing any further crime, or attempting to withdraw the plea after the district court accepts Defendant's guilty plea. If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Restitution, Forfeiture, and Fines**

35. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

36. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) no later than two weeks after the re-arraignment. Defendant agrees to authorize the release of all financial indictment requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax indictment, bank account records, credit histories, and social security indictment. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

37. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks that have custody of his assets to deliver all funds and records of such assets to the United States.

38. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Restitution**

39. Defendant agrees to pay full restitution to any victim, including any health care

13

benefit program, regardless of the count of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, health care benefit programs incurred a monetary loss of at least $4,700,000.00. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of Paragraph 8, the Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Forfeiture**

40. Defendant stipulates and agrees that the Statement of Facts for his guilty plea supports the forfeiture of at least $258,000.00 from the criminal offenses and that the Statement of Facts for his guilty plea supports the forfeiture of at least $258,000.00. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, § 853(p) exists. Defendant agrees to forfeit any of his property in substitution, up to a total forfeiture of up to at least $258,000.00. Defendant agrees to the imposition of a personal money judgment in that amount.

41. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

42. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure.

43. Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

44. Defendant understands that, under the Sentencing Guidelines, the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

45. This written Plea Agreement, consisting of 18 pages, including the Plea Agreement Addendum, constitutes the complete agreement between the United States, Defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against his and that he is pleading guilty freely and voluntarily because he is guilty.

46. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Brownsville, Texas, on September 9th, 2019.

_____
Defendant

Subscribed and sworn to before me on September 9, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

ALLAN MEDINA
Acting Deputy Chief, Health Care Fraud Unit
U.S. Department of Justice

By: _____
KEVIN LOWELL
JACOB FOSTER
Trial Attorneys
United States Department of Justice
Criminal Division Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005

RYAN K. PATRICK
United States Attorney

_____
ANDREW R. SWARTZ
Assistant United States Attorney
U.S. Attorney's Office, SDTX
1701 W. Highway 83
McAllen, TX 78501

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. B-18-008-1 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Health Care Fraud) |
| JOSE GARZA, | ) | |
| | ) | |
| Defendant | ) | |

## PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines that may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

_____
SERGIO SANCHEZ, Esq.
Attorney for Defendant

9/7/2019
Date

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual that may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Plea Agreement, and I voluntarily agree to its terms.

_____  	_9/9/2019_____
JOSE GARZA                       	Date
Defendant